UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:98-CR-64-SDJ |
| | § | |
| RALPH NATHANIAL THOMPSON | § | |
| (2) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Ralph Nathaniel Thompson's Motion for Compassionate Relief Pursuant to the "Catch-All Provision" under the First Step Act's Amended § 3582(c)(1)(A)(i) of 2018, (Dkt. #537). Thompson also filed Supplemental Exhibits of Record to Motion for Compassionate Release, (Dkt. #539), as well as a letter with an attached exhibit, (Dkt. #540). The Government filed a response in opposition, (Dkts. #543 and #544), and a supplemental response, (Dkt. #549), to which Thompson filed a reply, (Dkt. #555), and a supplemental reply, (Dkt. #557). The Court, having considered the motion, the subsequent briefing, and the applicable law, **DENIES** the motion.

### I. BACKGROUND

**A. Criminal Conviction and Sentence**

After a jury trial, Thompson was convicted on one count of Racketeer Influenced and Corrupt Organization (RICO) in violation of 18 U.S.C. § 1962, one count of Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d), one count of Conspiracy to Distribute Cocaine in violation of 21 U.S.C. § 846, and one count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h).

1

Thompson was sentenced to life in prison. He is currently serving his sentence at the Bureau of Prison's ("BOP") FCI Victorville facility in Adelanto, California.

**B. Appeal to the Fifth Circuit**

The United States Court of Appeals for the Fifth Circuit affirmed Thompson's conviction and sentence. Of the issues presented for review on appeal, two are relevant to Thompson's instant motion. First, Thompson unsuccessfully argued on appeal that the district court erred at sentencing by (1) finding that "the murder of Frankie Dunham was reasonably foreseeable to him" and (2) subsequently concluding that the applicable calculations under the Sentencing Guidelines resulted in a life sentence. *United States v. Thompson*, 253 F.3d 700, *17, No. 99-41007 (5th Cir. 2001) (unpublished).

Second, Thompson unsuccessfully argued on appeal that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), the Fifth Circuit should have remanded his case for resentencing. The Fifth Circuit concluded that since "[t]here was no dispute at trial that the quantity of cocaine involved in the offense was greater than 5 kilograms," that fact alone justified a life sentence. *Id*. at *18.

**C. Thompson's First 28 U.S.C. § 2255 Motion**

Thompson filed his first motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on February 3, 2003. *Thompson v. United States*, No. 4:03-cv-28 (E.D. Tex. 2004). Thompson argued that under *Apprendi, supra.*, his sentence was invalid because the Government failed to prove and the jury failed to find (1) the quantity and type of drugs involved, and (2) that the first-degree murder

of a witness was reasonably foreseeable to him. *Thompson*, No. 4:03-cv-28, (Dkt. #1). The Magistrate Judge issued a report and recommendation, recommending that the motion should be denied because (1) *Apprendi* was a new rule of criminal procedure that did not apply retroactively to initial § 2255 motions, and (2) the Fifth Circuit had previously rejected Thompson's *Apprendi* argument on direct appeal. *Id.* at Dkt. #7. The District Court adopted the report and recommendation, (Dkt. #11), and dismissed Thompson's case, (Dkt. #12). The Fifth Circuit denied Thompson's request for a certificate of appealability. *United States v. Thompson*, No. 04-40181 (5th Cir. 2004).[1]

**D. Thompson's Second 28 U.S.C. § 2255 Motion**

Thompson filed his second motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on May 27, 2021. *Thompson v. United States*, No. 4:21-cv-401 (E.D. Tex.). Thompson alleges that he is actually innocent of the judicial finding that increased his sentence to life imprisonment. Specifically, Thompson contends that the District Court erred in finding that the first-degree murder of a witness was reasonably foreseeable to him. This case is pending.

**E. Thompson's First Motion for Compassionate Release**

Thompson filed his first Motion for Compassionate Release Pursuant to the First Step Act on June 8, 2020, (Dkt. #522). Although the Court dismissed Thompson's compassionate-release motion for lack of jurisdiction, (Dkt. #531), the

---

[1] Thompson filed two applications for leave to file second or successive petitions under 28 U.S.C. § 2255 with the Fifth Circuit. Both applications essentially sought the same relief as Thompson's original § 2255 motion. The Fifth Circuit denied both of Thompson's applications.

3

Court addressed Thompson's claims, many of which are again raised in the current motion pending before the Court.

**F. Thompson's Current Motion for Compassionate Release**

Relying on 18 U.S.C. §3582(c)(1)(A)(i), Thompson now requests that the Court reduce his sentence from life imprisonment to a range of 240 to 360 months or to time served. Thompson argues that extraordinary and compelling reasons justify his release under the statute. Those reasons include Thompson's "post-offense rehabilitation and family support," the "COVID-19 outbreak which resulted in Petitioner contracting the virus," and "a mandatory minimum life sentence is no longer authorized under current law."

## II. DISCUSSION

**A. 18 U.S.C. § 3582(c)(1)(A)**

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984. Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following conditions: (1) extraordinary and

4

compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)). Instead, Congress delegated that authority to the Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated U.S.S.G. § 1B1.13. In application note 1 to Section 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A)(i). U.S.S.G. § 1B1.13 cmt. n.1. The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant; (3) issues arising from the defendant's family circumstances; and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case. *Id.* And because Section 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to Section 994(t), the

5

policy statements contained in Section 1B1.13 were binding on district courts considering Section 3582(c)(1)(A)(i) motions. *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)).

In 2018, Congress amended Section 3582(c)(1)(A) with the passage of the First Step Act. The amendment provided that, in cases where the BOP does not file a compassionate-release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate-release framework. *Id.* at 391. Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, Section 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same. *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under Section 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions. The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to Section 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to Section 3582(c)(1)(A) motions filed by

6

prisoners. 993 F.3d at 392.[2] Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling reasons" when a Section 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a Section 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy statement continues to govern where it says it governs—on the motion of the Director of the Bureau of Prisons. But it does not govern here—on the newly authorized motion of a prisoner." (quotation omitted)). Therefore, when a prisoner files a compassionate-release motion, courts must determine what constitutes an "extraordinary and compelling reason" under Section 3582(c)(1)(A)(i).

## B. Extraordinary and Compelling Reasons

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is not wholly irrelevant. Courts should still look to the policy statement for guidance in determining what constitute "extraordinary and compelling reasons" for a sentence reduction when a prisoner files a compassionate-release motion. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to

---

[2] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners. *See, e.g., United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all Section 3582(c)(1)(A) motions).

merit compassionate release."); *see also, e.g.*, *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."). Using the policy statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same. Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). And as noted above, the First Step Act did not change Section 3582(c)(1)(A)'s substantive requirements. Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both motions. In other words, Section 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern Section 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in Section 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a

compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf. *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request. Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests based on the interpretation applicable to its motions. The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under Section 3582(c)(1)(A).

Using U.S.S.G. § 1B1.13 and its commentary as guidance to determine what is extraordinary and compelling in defendant-filed motions is further warranted by Congress's mandate that the Sentencing Commission, rather than courts, determine what constitute "extraordinary and compelling reasons" warranting a sentence reduction under Section 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to issue policy statements describing what constitute extraordinary and compelling reasons under Section 3582(c)(1)(A)); *Garcia*, 655 F.3d at 435 (concluding that Congress intended the Sentencing Commission's policy statements to be binding on courts in Section 3582(c) proceedings). To be sure, the Fifth Circuit has held that there is no binding policy statement because the Sentencing Commission has yet to amend its guidelines to account for the fact that

defendants can now file compassionate-release motions. *See Shkambi*, 993 F.3d at 392. But Section 1B1.13 and its commentary still provide substantial insight into what the Sentencing Commission considers to be an "extraordinary and compelling reason" because the statutory standard the Sentencing Commission was applying when it promulgated Section 1B1.13 has not changed.

Nor does Section 1B1.13 become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to motions brought by the Director of the BOP. Section 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'"—the standard that applies equally to BOP motions and prisoner motions. *Gunn*, 980 F.3d at 1180. Indeed, when the Sentencing Commission promulgated Section 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A). 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions. Rather, Section 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under Section 3582(c)(1)(A). And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of Section 994(t)'s directive. *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t)."). Because Section 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing

Commission's definition of Section 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under Section 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes. Therefore, any proffered "extraordinary and compelling reason" that is not contained in the Sentencing Commission's policy statement should nonetheless be similar to those reasons in order to warrant release under the statute. In this sense, the Court's analysis of whether Thompson has presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided, though not strictly bound, by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

**C. Thompson's Motion**

Thompson's motion must be denied because he has failed to present "extraordinary and compelling reasons" within the meaning of Section 3582(c)(1)(A)(i). Thompson primarily argues that compassionate release is appropriate because the sentence he received is longer than the sentence he would receive for the same conduct today. He contends this is because facts that increased his mandatory minimum sentence were found by the sentencing judge by a preponderance of the evidence. Additionally, Thompson argues that his post-conviction rehabilitation justifies his release. Further, Thompson argues that a

COVID-19 outbreak at his facility caused him to contract the virus. Finally, Thompson contends that he is currently having difficulty obtaining his prescriptions.

**1. Exhaustion**

As an initial matter, Thompson's compassionate-release motion may be considered only if he first meets Section 3582(c)(1)(A)'s exhaustion requirement. The statute provides that a court may not consider any modification to a defendant's sentence under Section 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A). The Government disputes that Thompson has met the exhaustion requirement. Attached to Thompson's original compassionate-release motion is a request Thompson claims to have submitted to his warden on April 22, 2020. The request appears to be an official form used by the BOP for inmates to use to submit requests to prison staff. Thompson's request is filled out, dated, and addressed to the warden of his facility. The request claims that a COVID-19 task force found that men are at a higher risk of contracting COVID-19, and "Black men over 50 with medical conditions as mine are at a much higher risk of contracting the virus and dying from it." (Dkt. #522-1). The request further asks the warden to consider that Thompson has served over 20 years of his sentence for a crime that he is actually innocent. Thompson noted that consideration of actual innocence was for "informational purposes only." *Id*.

Thompson also claims to have submitted a Compassionate Release General Questionnaire to the warden on May 23, 2021. (Dkt. #540-1). Again, the request

12

appears to be an official form used by the BOP for inmates to use to submit requests to prison staff. Thompson's request is filled out, dated, and addressed to the warden of his facility. Thompson's responses to the Questionnaire reveal that Thompson suffers from high blood pressure/hypertension, obesity, sleep apnea, and gastritis. Thompson's responses further reveal that he has a history of smoking and has recovered from COVID-19.

In the Government's response (Dkt. #543), the Government states that the BOP has no record of either of Thompson's requests. (Dkt. #543 at 3). The Government also submitted a declaration from Randy Ament, the Complex Case Manager Coordinator and Acting Unit Manager at the United States Department of Justice, Federal Bureau of Prisons Federal Correctional Complex in Victorville, California, who declared that there is no record of Thompson's requests. (Dkt. #549-1 at 1).[3]

In its Memorandum Opinion and Order denying Thompson's first motion for compassionate release, the Court found that Thompson submitted the April 22, 2020 request for compassionate release to his warden, (Dkt. #531). Consistent with the Court's prior ruling, the Court finds that Thompson submitted the April 22, 2020 request to his warden. Likewise, the Court finds that Thompson submitted the May 23, 2021 request to his warden. Further, when Thompson filed the instant

---

[3] Both the Government and Mr. Ament conflate the date of Thompson's April 22, 2020 request for compassionate release that he claims to have submitted to his warden with the date Thompson filed his original motion for compassionate release with this Court.

13

compassionate-release motion, more than thirty days had passed since the date indicated on both requests.

However, the requests to the warden only included arguments regarding COVID-19, Thompson's medical conditions, his age, and race. While his initial request to the warden contained an argument (for informational purposes only) that he has "served over twenty years in prison for a crime that [he is] actually innocent of," it does not contain the argument raised by Thompson in his motion that the sentence he received is longer than the sentence he would receive for the same conduct today. Nor do his requests to the warden raise the issues of his rehabilitation or his current inability to obtain his prescriptions. As this Court has previously stated, "[i]n order to exhaust [his] administrative remedies, a prisoner must first present to the BOP the *same grounds warranting release* that the prisoner urges in [his] motion." *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (emphasis added). Therefore, the Court will not consider these new reasons because Thompson has not satisfied the exhaustion requirement with respect to these arguments.[4]

---

[4] Even if the Court were to consider these additional bases for reduction in sentence, none would constitute an "extraordinary and compelling reason" within the meaning of the statute. First, Thompson argues that the sentence he received is longer than the sentence he would receive for the same conduct today. According to Thompson, this is because facts that increased his mandatory minimum sentence were found by the sentencing judge by a preponderance of the evidence. As illustrated in the Background section, *supra.*, Thompson has asserted this argument *ad nauseum*. As this Court previously explained to Thompson in its prior Memorandum Opinion and Order denying Thompson's first compassionate-release motion, after the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), facts that increase a defendant's mandatory minimum sentence must be found by the jury beyond a reasonable doubt.

However, Section 3582 does not provide a mechanism for challenging sentences as unconstitutional under intervening Supreme Court precedent. *United States v. Hicks*, 663

**2. "Extraordinary and Compelling Reasons" Warranting Release**

Turning to the applicable law, as explained above, the Court first looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" contained in U.S.S.G. § 1B1.13 and its application notes. The first category of "extraordinary and compelling reasons" identified by the Sentencing Commission consist of circumstances arising from certain medical conditions. Section 1B1.13's application note 1 provides the following two circumstances under which a defendant's medical condition may warrant a sentence reduction:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>     (I) suffering from a serious physical or medical condition,
>     (II) suffering from a serious functional or cognitive impairment, or
>     (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

F.App'x 299, 302 (5th Cir. 2016). Section 3582 provides limited grounds under which a defendant can obtain a sentence reduction but does not provide an opportunity to relitigate sentencing issues. *Id.* (citing *Dillon*, 560 U.S. at 831; *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995); *United States v. Shaw*, 30 F.3d 26, 29 (5th Cir. 1994)). Because Thompson's argument regarding *Alleyne* relates to findings made at his original sentencing, it is not cognizable in a Section 3582(c) motion. *See id.*; *United States v. Flores*, 782 F.App'x 310, 312 (5th Cir. 2019); *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011).

    Second, Thompson's rehabilitation, without more, cannot be considered an extraordinary reason justifying reduction in his sentence. *See* 28 U.S.C. § 994(t). Finally, the Court cannot address Thompson's inability to obtain his prescriptions until Thompson properly raises this issue with his warden.

U.S.S.G § 1B1.13 cmt. n.1(A). Thompson states that the COVID-19 outbreak at his prison facility caused him to contract the virus. Although he has recovered from the virus, Thompson maintains his past COVID-19 infection constitutes an extraordinary and compelling reason justifying a reduction in his sentence. However, this argument does not comport with the plain text of application note 1 to U.S.S.G. § 1B1.13. Specifically, the defendant must be presently suffering from a serious medical condition and such condition must presently diminish the defendant's capacity to engage in self-care in the environment of a correctional facility. Thompson has failed to argue that he is presently suffering from a serious medical condition and that he is unable to engage in self-care. Accordingly, Thompson's past concerns about COVID-19 do not fall within the "extraordinary and compelling reasons" enumerated by the Sentencing Commission in its commentary to U.S.S.G. § 1B1.13.

Because the Fifth Circuit has held that the Sentencing Commission's definition of "extraordinary and compelling reasons" governs Section 3582(c)(1)(A)(i) motions only when such motions are filed by the BOP, Thompson's failure to show that his circumstances fall within those described by the Sentencing Commission is not fatal to his motion. However, as discussed above, the Court still looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" as significant guidance in construing that phrase as to defendant-filed motions. *See Thompson*, 984 F.3d at 433 (noting that the Sentencing Commission's commentary "informs [the] analysis" as to what constitute "extraordinary and compelling reasons" for defendant-filed compassionate-release motions). Accordingly, Thompson's allegedly

16

"extraordinary and compelling reasons" should be similar in kind to those enumerated by the Sentencing Commission.

The reasons Thompson asserts as a basis for his release are unlike any of the reasons enumerated by the Sentencing Commission in its commentary to U.S.S.G. § 1B1.13. The circumstances in application note 1 all include significant hardships that are *presently* affecting the defendant, including where a medical condition or the aging process is presently causing the significant health problems or where the defendant has minor children or an incapacitated spouse who are presently left without a caregiver as a result of the defendant's incarceration. By contrast, Thompson argues that his sentence should be reduced or he should be released because the COVID-19 outbreak at his prison facility caused him to contract the virus in the past.

Thompson's motion does not identify any specific, significant hardship that he presently faces; rather, the motion raises only the fact that Thompson contracted COVID-19 in the past. As the Government notes in its response, Thompson is currently classified as "Care Level 1 'healthy or simple chronic care.'" (Dkt. #543 at 4). There is no analogous provision in Section 1B1.13 or its commentary where a past COVID-19 infection contracted while incarcerated is considered an "extraordinary and compelling reason" as that phrase is used in 18 U.S.C. § 3582(c)(1)(A)(i).

Thompson has therefore failed to present an "extraordinary and compelling reason" within the meaning of Section 3582(c)(1)(A)(i). Because Section

17

3582(c)(1)(a)(i) authorizes sentence reductions only for "extraordinary and compelling reasons" within the meaning of the statute, Thompson's motion must be denied.

### 3. Section 3553(a) factors

Even if Thompson could establish that "extraordinary and compelling reasons" warrant his release, his motion for compassionate release would still fail because the sentencing factors under 18 U.S.C. § 3553(a) weigh against him. Thompson has failed to show how releasing him before he serves the full term of his sentence would align with the statutory sentencing factors—notably the seriousness of his offense, the need to promote respect for the law, the need to provide just punishment for the offense, and the need to deter others from similar criminality. 18 U.S.C. § 3553(a).

While the Court commends Thompson for participating in programs and holding steady employment while incarcerated, he continues to present a danger to the community based on the totality of the circumstances. Thompson was "convicted on a variety of conspiracy and substantive offenses arising out of a multi-state cocaine distribution and money laundering enterprise that engaged in acts of violence, including murder, robbery, and obstruction of justice." *Thompson*, 253 F.3d at *1. Thompson entered the conspiracy as a drug courier but he eventually became the "right-hand man" to Mark Barney, the leader of the enterprise, and "served as a liaison between Barney and other major distributors." *Id*. Thompson was present when Barney "stated that something had to be done with Frankie Dunham, an employee of the enterprise who was cooperating with police." *Id*. at *2. Dunham was murdered "one week before she was to testify against [Barney] in a state court

18

proceeding." *Id*. Thompson fails to show how his release reflects the seriousness of his offense, promotes respect for the law, and provides just punishment. Considering all the relevant factors, the Court concludes that the sentence originally imposed remains sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a). Thompson's motion is therefore also denied on this basis.

### D. Motion to Seal

The Government has also moved to seal an exhibit filed with its briefing in response to Thompson's motion for compassionate relief. (Dkt. #542). Specifically, the Government requests that the Court seal Thompson's medical records. Because the medical records contain extensive sensitive personal information from Thompson's treating physicians, the Court concludes that the medical records, (Dkt. #544), should be sealed.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant Ralph Nathaniel Thompson's Motion for Compassionate Relief Pursuant to the "Catch-All Provision" under the First Step Act's Amended § 3582(c)(1)(A)(i) of 2018, (Dkt. #537), is hereby **DENIED**.

**So ORDERED and SIGNED this 17th day of June, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE